The fourth case for argument today is United States v. Blount. Ms. Christensen. Good morning, your honors. May it please the court, counsel. My name is Joanna Christensen and I represent the appellant, Linnel Blount. The district court violated Mr. Blount's speedy trial rights by failing to make adequate, individualized case-specific findings and excluding time in this case. The district court relied on solely the district-wide general orders in making these findings. Did you or your predecessor ever file a motion to dismiss the indictment? No, your honor. So, given 3162A2, is there anything left to this appeal? There is a path forward for Mr. Blount and that is a combination of defense counsel objections and then Mr. Blount's pro se filings. And this court in Katib noted that there would be such a path forward if defense counsel failed to file the motion to dismiss and a pro se defendant had. And Mr. Blount did in fact file several motions regarding his speedy trial rights. Did he file a motion to dismiss? He filed at docket number 89 a document entitled proof for dismissal for this case in which he asked the case to be dismissed and then in 99 asked for dismissal based on the statute speedy trial. He was not ever formally pro se in this case. He was represented by counsel. That's the path forward in this case. I acknowledge that this is an all or nothing type of preservation. There's no waiver. I mean, there's no forfeiture. There's only waiver if it's not preserved. But we believe that the combination of what the defense attorney argued and Mr. Blount's pro se filings put the parties and the court on alert that he was asking to dismiss this case for the speedy trial violations. Regarding the substance of the violation themselves, the district court, of course, must make specific findings. If it's an end of justice type of finding, there are factors the court must consider. And the failure to make those findings means the times count against the speedy trial clock. The general orders in the district court are not enough here. They were not formally adopted by the district court. They were merely filed on the docket as they were in nearly every case that was pending when the pandemic started in March of 2020. The general orders essentially allowed a wholesale evasion of the Speedy Trial Act. And other circuits to have considered this issue, because this court not yet has, have had a combination of general orders and specific findings by the district court. And we don't have those here. The district court made no specific findings for that entire time that is the bulk of what we're claiming the days are March to November of 2020. Ms. Christensen, other circuits have reached this, the Fourth Circuit and the Payer case. Our circuit has not. Why do you think not? I think that perhaps it just hasn't been argued. There haven't been motions to dismiss. And again, because the preservation issue is so black and white in these kind of cases, that I think it just has not been argued thus far. The court did consider in one case, which is essentially an Anders brief situation, that it was an issue, but the defendant in that case didn't want to raise the issue. I also think, you know, in general, people, trial lawyers, judges, juries, didn't want to be part of a group project like a jury trial during COVID. And that's certainly understandable. But what the court had to consider here is that there were other options. The government noted that trials had started in this building again in October of 2020. And across the country, courts were doing trials in other ways. There were Zoom trials in several situations to preserve speedy trial rights. I don't know that the courts here were doing them in this building in this district, but they were being done. So those are the kind of findings that the court should have considered when addressing this issue. Does any Court of Appeals support that argument? There are a bunch of Courts of Appeals that reject it. Has any accepted it? As far as I know, no, Your Honor. You're asking us to create a conflict. In addition to the fact that you've got a lot of cases against you, you want us to buck the tide? Not entirely, because I think the difference is that in those cases, the district court did make specific findings in the case that was appealed. And in this case, we have those 248 days, I believe, where the district court made no case-specific findings and only relied on the general orders. And so in that case, you wouldn't necessarily have to go against the tide of circuits that there is a factual distinction in this case. So in addition, there are some of the courts that made that consideration. The defendant wasn't incarcerated. Mr. Blount was, in fact, in the MCC for that entire time. He was there long enough that, in fact, he was released shortly after he was sentenced because he had already served the bulk of his sentence. Of course, the conditions of confinement were a terrible COVID rampage. And he mentions all of those in his motion. So one last issue. The government argues that we have not argued prejudice. The case law says absent legal error, the defendant must show an abuse of discretion and prejudice. Our argument here is that there was the legal error. So we don't get to the abuse of discretion and the prejudice. That's the reason the court has a mixed standard of review, both de novo about the interpretation of the act and the abuse of discretion about the court's findings. So in a case where there are no findings, that's the legal error, and prejudice does not need to be shown. So unless the court has further questions, I will reserve my time for rebuttal. Certainly, counsel. Mr. Kerwin. Good morning. May it please the court. Brian Kerwin for the United States. Your Honors, the defendant waived his argument that the chief judge's orders violated his rights under the Speedy Trial Act. The act is explicit that a defendant waives his right to dismissal for an alleged violation of the act unless he moves for dismissal prior to trial on that basis. That's the circumstance here, which is precisely why there is no opinion or order of the district judge to review. The argument that the defendant primarily advances this morning on the waiver point, that one of the various pro se filings that the defendant submitted somehow preserved the right, is just not borne out by the record. The defendant had three separate lawyers before trial. He had a fourth lawyer for sentencing. None of those attorneys moved to dismiss the case, and none brought to the district court's attention that there was a pending motion on the docket that the court should be ruling on. This court has held repeatedly that hybrid representation is disfavored and that a district judge has wide discretion to ignore pro se filings for a represented party. And as we pointed out in the brief, the district judge had warned the defendant on several occasions that pro se filings would not be considered. Now, even if the issue were not waived, the Speedy Trial Act's 70-day clock did not expire in this case. As we calculate in the government's record, there are at most 53 days that the district court did not exclude on the basis of findings that continuing the proceedings, that the ends of justice served by continuing the proceedings outweighed the defendant's and the public's right to a speedy trial. Every other day within the primary time period about which the defendant complains, that March to November 2020 period, was excluded by the chief judge's general orders on account of the COVID-19 pandemic. As Judge Easterbrook alluded to, all six federal courts of appeals that have ruled on this issue have found the pandemic to be a sound basis for a chief judge's ends of justice exclusion applicable in all cases district-wide. I'll point out that in response to counsel's argument, the reason that many of those cases included separate findings that mirrored those of the chief judges by the presiding judge was precisely because a motion to dismiss had been filed in that case, which this court and the Supreme Court have held, is an opportunity for the district judge to put its more fulsome and complete rulings on the ends of justice finding on record. Fulsome? Correct. Do you know what that word means? I think I do. Fulsome means absurdly extended. The word fulsome is an insult, not a word of praise. So to call the district court's ruling fulsome is to insult the district judge, which is not what you want to do, I think. Let's go with the word complete. This court has said that that's the last opportunity that a district court has to put its complete rulings on why an ends of justice exclusion is appropriate. And the reason we don't have that here is because there was no motion. Mr. Kerwin, the 7th, 8th, and 9th general orders get docketed late. Do you know the mechanism? Are we talking about so many criminal cases that when the general order gets docketed, it automatically goes on to all of these criminal cases? And if so, why would this particular case not have those general orders? Or does each judicial assistant for all the criminal cases pending for that particular judge have to go in and put the general order in? I tried to glean the answer to that from the orders themselves. I'm not 100% certain what the answer is, but what I think the answer is is that the first five orders that were entered, that's from March 2020 through July, each required the clerk of court to notify all CMECF filers of the order. And so I think the mechanism that the clerk of court used to make that notification was to put them on the docket in every case. If you look at the 7th general order that was entered October 29th of 2020, that provision is not in there. And instead, the chief judge ordered the clerk of court to post it to the court's public website. So I think that that likely is why the first five orders appeared automatically on the docket and why the 7th, 8th, and 9th did not. It's also what prompted the district court in this case to then enter its own order, directing the clerk of court to put them on the docket, and noting that specifically he agreed with the ends of justice findings in those orders. But I think that that's why the first five were there automatically, and 7th, 8th, and 9th required a separate act by the district judge in this case. Thank you. So it sort of is a nice segue into my next point. From the beginning, all of the orders were automatically on the docket. The very first continuance that the district judge in this case entered pursuant to those orders used that language expressly in the minute order. It said, pursuant to the chief judge's general amended order, the trial was continued. That general order, of course, included the chief judge's ends of justice findings. When Judge Norville then continued the trial again in November of 2020 in a minute order, he cited to the 7th general order and said it was pursuant to that order. And as I said, when 7th, 8th, and 9th orders did not automatically appear on the docket, Judge Norville directed the clerk of court to add them. So preserved or not, the district court did not abuse its discretion in continuing defendant's trial and excluding time under the Speedy Trial Act during the first eight months of a deadly global pandemic. Unless the court has any additional questions for the government, I'll ask that the court affirm the sentence and conviction of the district court. Thank you, Mr. Kerwin. Anything further, Ms. Christensen? Thank you, Your Honor. I will respond briefly to the argument that I hadn't raised the pro se filings in my brief. The pro se filings are detailed in my brief. I'm simply pointing out this morning, directing you to the two documents where Mr. Blount himself does ask for a dismissal. And it's not a simple, they're several pages long, it's not a simple, I asked this case to dismiss. He cites the statute, he cites the reasons, and docket numbers 89 and 99. And that's in addition to several other indications he makes that his speedy trial rights are being violated. Under the Katib case, we believe this is enough to give Mr. Blount a path forward. Unless the court has further questions on the issue, I will ask the court to reverse and remand. Thank you. Thank you very much. The case is taken under advisement.